[Cite as *State v. Cleary*, 2011-Ohio-3725.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24217 |
| vs. | : | T.C. CASE NO. 10CR453 |
| BEAU CLEARY | : | (Criminal Appeal from Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . .

O P I N I O N

Rendered on the 29th day of July, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; R. Lynn Nothstine, Atty Reg. No.0061560, P.O. Box 972, Dayton, Ohio 45422
 Attorney for Plaintiff-Appellee

Don Brezine, 188 West Hebble Avenue, Fairborn, OH 45324
 Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Beau Cleary, appeals from his conviction and sentence for attempted rape.

{¶ 2} In December of 2009, M.B. resided in an apartment in Kettering, Ohio with her two young sons who were ages three years and eighteen months.  During the prior summer months, M.B. engaged in a relationship with Defendant, Beau Cleary.  Since then,

Defendant had undertaken a relationship with another woman, who was a friend of M.B.

{¶ 3} On December 29, 2009, at around 9:12 p.m., Defendant called M.B. and asked if he could come over and visit M.B.'s children. M.B. agreed, and Defendant later arrived at M.B.'s apartment with his friend, Dustin Cooper.

{¶ 4} M.B. and her three year old son were in the living room, watching television. M.B.'s eighteen month old son was upstairs asleep. Upon arriving, Cooper sat down on the couch while Defendant immediately went upstairs and used the bathroom. Defendant came back downstairs, said something, and immediately went back upstairs. Concerned about her younger son, M.B. followed Defendant upstairs.

{¶ 5} Defendant went into M.B.'s bedroom. When M.B. tried to remove Defendant from her bedroom, Defendant began kissing M.B.'s neck, saying, "You know you want it." M.B. told Defendant he was drunk and needed to leave. Defendant then pushed M.B. onto the bed, again telling her, "You know you want it." M.B. responded, "No, you need to leave." A wrestling match ensued, and both M.B. and Defendant fell off the bed onto the floor.

{¶ 6} Defendant held M.B. down with one hand while pulling down his pants and M.B.'s pants with his other hand. Defendant then attempted to insert his penis into M.B.'s vagina but was interrupted by his ringing cell phone. M.B.'s three year old son, who had

followed his mother upstairs and was in the bedroom and witnessed this incident, began hitting Defendant with a gallon milk container. When Dustin Cooper came upstairs and entered M.B.'s bedroom and attempted to remove the boy, the boy "threw a fit." Cooper let go of the boy and left the bedroom. Defendant finally gave up and he and Cooper left. Before Defendant left, he asked M.B. if she was going to tell his new girlfriend about this incident. When M.B. indicated that she did intend to tell the woman about it, Defendant threatened to come back the next night.

{¶ 7} After Defendant and Cooper left, M.B. went to her next door neighbor's apartment for help. She was shaking and crying hysterically. Police were called and M.B. was taken to Kettering Medical Center for a sexual assault examination. Samantha Griffith, the sexual assault nurse, found three areas of redness on M.B.'s cervix that she concluded were consistent with digital penetration and caused by trauma. DNA analysis of dried stains found on M.B.'s neck and inner thigh showed a mixed DNA profile, but Defendant was excluded as one of the contributors.

{¶ 8} Defendant was indicted on one count of attempted rape, R.C. 2923.02(A), 2907.02(A)(2), and one count of forcible rape, R.C. 2907.02(A)(2). Following a jury trial Defendant was found guilty of attempted rape but not guilty of rape. The trial court sentenced Defendant to four years in prison and classified him as a Tier III sexual offender.

{¶ 9} Defendant appealed to this court from his conviction and sentence.

**FIRST ASSIGNMENT OF ERROR**

{¶ 10} "IT IS ERROR FOR THE COURT TO ALLOW OVER A DEFENDANT'S OBJECTION THE PROSECUTOR TO CROSS EXAMINE THEIR OWN WITNESS WITHOUT FIRST HAVING THAT WITNESS CLASSIFIED AS HOSTILE. FURTHER, IT IS ERRONEOUS FOR A WITNESS TO BE CLASSIFIED AS A COURT'S WITNESS WHEN THE COURT HAS NOT ASKED THE STATE TO IDENTIFY THE INCONSISTENCIES AND WHEN THESE INCONSISTENCIES DO NOT IN FACT EXIST AND WHEN THE PROSECUTOR ACTUALLY KNEW THAT THE CLAIM OF INCONSISTENCY IN THE WITNESS WAS A RESULT OF THE DETECTIVE NOT FINDING THE WITNESS CREDIBLE FOR HIS OWN REASONS, WHICH INCLUDE THE WITNESS' REFUSAL TO AGREE WITH WHAT THE DETECTIVE WANTED HIM TO SAY."

{¶ 11} Defendant argues that the trial court erred by declaring Dustin Cooper, a witness called by the State, a court's witness pursuant to Evid.R. 614, which then allowed the State to cross-examine and impeach its own witness via prior inconsistent statements without showing surprise and affirmative damage as required by Evid.R. 607.

{¶ 12} Just prior to Defendant's trial, the State filed a motion requesting that Dustin Cooper be declared a court's witness, suggesting he had made inconsistent statements about the events, refused to give police a written statement, is a friend of Defendant, and had shown hostility toward the State. The State's

motion did not identify the specific prior inconsistent statements Cooper gave to police or the specific inconsistencies with his anticipated trial testimony.

{¶ 13} During the State's direct examination of Dustin Cooper at trial, Cooper denied telling police that he had gone upstairs to use the bathroom while at M.B.'s apartment with Defendant. Subsequently, the following occurred:

{¶ 14} "Q.   I'm going to go back to February 3rd, 2010.   The Detective came out to talk you again; is that correct?

{¶ 15} "A.   Yes.

{¶ 16} "Q.   And on that particular date, he asked you to write out a statement again; is that right?

{¶ 17} "A.   Yeah.

{¶ 18} "Q.   And what did you – how did you respond?

{¶ 19} "A.   I told him I didn't feel why I needed to, I didn't see why I needed to write out a statement.   I mean it was kind of a shock to me, he needed me to write out a statement and I didn't know what for.

{¶ 20} "Q.   You didn't ask if you should speak to a lawyer first?

{¶ 21} "A.   Yeah.   I believe it did.

{¶ 22} "Q.   Okay.   And what was his response?

{¶ 23} "A.   I'm not sure.

{¶ 24} "Q.   Okay.   You don't remember him saying --

{¶ 25} "MR. HARRISON: Objection --

{¶ 26} "BY MR. MICHENER:

{¶ 27} "Q. – you've got to write out --

{¶ 28} "MR. HARRISON: Objection.

{¶ 29} "THE COURT: Counsel. Approach.

{¶ 30} (At sidebar)

{¶ 31} "THE COURT: Is it time yet to decide on your motion to have him declared a Court witness?

{¶ 32} "MR. MICHENER: I believe so, Your Honor. At this point he's denying making certain statements to the officer. That's inconsistent with what he told the officer, so at this point I'm asking to have him declared the --

{¶ 33} "MR. HARRISON: Well --

{¶ 34} "MR. MICHENER: – Court's witness.

{¶ 35} "MR. HARRISON: – he's just – the only thing I'm objecting to is you're about to say the officer told him that was – if he was going to lie, he needs a lawyer --

{¶ 36} "MR. MICHENER: Well --

{¶ 37} "MR. HARRISON: – or something like that.

{¶ 38} "MR. MICHENER: – yes

{¶ 39} "MR. HARRISON: That's all I'm --

{¶ 40} "MR. MICHENER: He asked if he should get a lawyer, I guess we'll – that he did say, 'You can write out a statement.

And if you are going to lie then you should get a lawyer.  If you're going to tell the truth --

{¶ 41} "MR. HARRISON:  Yeah, I just --

{¶ 42} "MR. MICHENER:  – then write out a statement.'

{¶ 43} "MR. HARRISON: I think that's appealable.  I think it's mistrial to --

{¶ 44} "MR. MICHENER:  On what basis?

{¶ 45} "MR. HARRISON:  – to attribute – to gratuitously have this – have the --

{¶ 46} "MR. MICHENER: It's a defendant's action --

{¶ 47} "MR. HARRISON:  – conversation --

{¶ 48} "THE COURT: Well I haven't heard – well, first of all, we're going to have a – declare this a Court's witness, so you may cross now, now to include a statement.  So because he can cross now, you can ask him if he (indiscernible).

{¶ 49} "MR. MICHENER: Your Honor, what I'm trying to get it.  I'm trying to elicit the – what the officer said to see the effect on the (indiscernible).  So in other words, the officer says 'if you are going to lie, then yeah, you need a lawyer.'  He then says, 'I want a lawyer.'  That basically shows the effect on the listener.

{¶ 50} "MR. HARRISON: I think that's totally irregular.

{¶ 51} "THE COURT: I'm just trying to think – well, I've never heard it before, but it doesn't mean it's not a clever police tactic.

{¶ 52} "MR. HARRISON: Well, if --

{¶ 53} "MR. MICHENER: But, Judge, he certainly can argue to the Jury what the relevance in that statement is, but the fact that it was stated is what I'm trying to get in

{¶ 54} "THE COURT: Yeah.

{¶ 55} "MR. HARRISON: I don't – you're getting the testimony. You're – get the testimony about a police officer, and that's to give authority, an implied authority to this guy who just makes an off-the-wall statement, 'Well if you're going to lie,' and, 'better get a lawyer.' And so he says 'Well, I'll go get a lawyer.' So now he's lying. I mean this is – this is just too far out. I mean it's, you know, you could --

{¶ 56} "MR. MICHENER: Judge, the statement was made --

{¶ 57} "MR. HARRISON: – you could ask him if he was lying.

{¶ 58} "MR. MICHENER: He made the statement and then he reacted a certain way.

{¶ 59} "MR. HARRISON: The cop made the statement.

{¶ 60} "MR. MICHENER: Well, and then he reacted a certain way, and I think that's relevant.

{¶ 61} "THE COURT: I'm going to – because it is cross now, we're going to note your objection and anticipate after – well, I don't – I haven't seen what his answer is going to be yet.

{¶ 62} "MR. HARRISON: Well, let me --

{¶ 63} "THE COURT: Then you make any other motion --

{¶ 64} "MR. HARRISON: – ask you this. Why are we making this the Court's witness?

{¶ 65} "MR. MICHENER: Because he's making inconsistent statements.

{¶ 66} "THE COURT: Yeah.

{¶ 67} "MR. HARRISON: This is not inconsistent. I mean, hell he --

{¶ 68} "MR. MICHENER: He just --

{¶ 69} "MR. HARRISON: – don't even remember it.

{¶ 70} "MR. MICHENER: He just – if he says he doesn't remember, that is an inconsistent statement. If you look at the rule, claiming you don't know, making a statement --

{¶ 71} "THE COURT: Yeah.

{¶ 72} "MR. MICHENER: – is the basis of that.

{¶ 73} "THE COURT: That's right.

{¶ 74} "MR. HARRISON: All right.

{¶ 75} (End sidebar)

{¶ 76} "BY MR. MICHENER:

{¶ 77} "Q. Sir, I'm going to ask you again. Do you remember after you asked if you needed a lawyer, that the officer said if you're going to write out the truth, you don't need a lawyer, but if you're going to write out a bunch of lies then you might want

to get one.  Do you remember that officer asking you that or saying that?

{¶ 78} "A.  Uh-huh.

{¶ 79} "Q.   Okay.  Do you remember saying to him (sic), I think I'm getting into – going to get an attorney then?

{¶ 80} "A.  No.  I said I might need to speak with one.

{¶ 81} "Q.  Okay.  At that point you didn't want to write out a statement, you wanted to talk to an attorney, correct?

{¶ 82} Yeah.  I wasn't sure why I was being asked to write out a statement."  (T. 197-202).

{¶ 83} Evid.R. 614(A) provides:

{¶ 84} "Calling by court.  The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

{¶ 85} A trial court may in the exercise of its sound discretion call individuals as witnesses of the court.  *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379; *State v. Adams* (1980), 62 Ohio St.2d 151.  The purpose of Evid.R. 614 is to allow the jury to hear evidence that would be beneficial to the jury in performing its fact-finding responsibilities and ascertaining the truth of the matter.  *Id*.  However, it is error to declare an individual a court's witness, solely for the purpose of allowing the party calling that witness to impeach the credibility of its own witness

by means of a prior inconsistent statement. *Arnold.* Doing so improperly relieves the party of the burden specifically imposed by Evid.R. 607(A) to first show surprise or affirmative damage.

{¶ 86} The State never claimed surprise or affirmative damage to its case with respect to Cooper's testimony. Instead, the State alleged that Cooper was "making inconsistent statements" when he testified that "he doesn't remember" whether Detective Markowski had made a statement to Cooper. A lack of recollection is not an inconsistency. Furthermore, a witness's recollection may be refreshed, but through use of the witness's own writings. Evid.R. 612. A simple assertion of a prior statement the witness allegedly made is improper, absent an inconsistency with his trial testimony.

{¶ 87} Where the basis of a motion to declare an individual a court's witness is that the witness's trial testimony will contradict prior statements the witness has made to police, the court must be presented with and know the specific inconsistencies involved in order to exercise its discretion in ruling on the motion. Here, the alleged specific prior inconsistent statements Cooper made to police and the specific inconsistencies with his trial testimony was not presented to the court, either in the State's motion to have Cooper declared a court's witness or when the trial court granted Defendant's motion during trial. Accordingly, the trial court abused its discretion by declaring Dustin Cooper a court's witness, allowing the State to

cross-examine and impeach its own witness with prior inconsistent statements Cooper made to police.

{¶ 88} Defendant objected to the testimony the State wished to elicit from Cooper, which is the subject of Defendant's second assignment of error.  However, Defendant failed to object specifically to the State's motion asking the trial court to declare Cooper a court's witness.  Any error in the court's ruling declaring Cooper a court's witness has been forfeited, except for plain error.  *State v. Payne*, 114 Ohio St.3d 501, 2007-Ohio-4642, at ¶23.  We see no plain error in this case.

{¶ 89} Defendant's first assignment of error is overruled.

<u>SECOND ASSIGNMENT OF ERROR</u>

{¶ 90} "IT IS ERROR FOR THE TRIAL JUDGE TO ALLOW TESTIMONY (FIRST IN THE FORM OF HERESAY [SIC] AND LATER BY DIRECT TESTIMONY OF MARKOWSKI) OF AN OFFICER'S OPINION OF WHEN A PERSON IS LYING. SUCH TESTIMONY AMOUNTS TO AN EXPERT OPINION WITHOUT QUALIFYING THE OFFICER AS AN EXPERT.  FURTHERMORE, SUCH TESTIMONY HAS A HIGHLY PREJUDICIAL EFFECT WHICH GREATLY OUTWEIGHS ANY PROBATIVE VALUE IT MAY HAVE.  WHILE THE OFFICER'S STATEMENT MAY BE A 'CLEVER POLICE TACTIC' TRIAL TRANSCRIPT P. 199, AS IT WAS CLASSIFIED BY JUDGE SINGER, IT IS IN NO WAY PROOF OR DISPROOF OF A PERSON'S VERACITY.  THE STATEMENT MADE TO THE WITNESS BY THE POLICE OFFICER WAS, 'I SAID IF YOU ARE SIMPLY GOING TO TELL ME THE TRUTH, WRITE OUT A TRUTHFUL STATEMENT, YOU – THERE'S NO REASON TO HAVE A LAWYER.

BUT IF YOU'RE GOING TO LIE TO ME, YEAH, YOU BETTER TALK TO A LAWYER.'
TRIAL TRANSCRIPT, P. 247:19-22."

{¶ 91} On February 3, 2010, Detective Markowski spoke with Dustin Cooper for the second time about the events in this case. During that conversation, Detective Markowski asked Cooper to provide a written statement. Cooper asked Detective Markowski if he should talk to a lawyer first. At trial, Markowski testified:

{¶ 92} "I said if you are simply going to tell me the truth, write out a truthful statement, you – there's no reason to have a lawyer. But if you're going to lie to me, yeah, you'd better talk to a lawyer." (T. 247). Cooper said he was going to talk to a lawyer and refused to provide a written statement at that time. (T. 248).

{¶ 93} During the State's prior direct examination of Dustin Cooper, a sidebar conference was held during which the court and counsel discussed, among other things, whether Cooper could be asked about what Detective Markowski said to him regarding providing a written statement. T. 197-200. The prosecutor explained that he was trying to elicit what Detective Markowski said to show its effect on the listener, Cooper. Defense counsel objected to that testimony, calling it appealable, a mistrial, totally irregular, and too "far out."

{¶ 94} The trial court overruled Defendant's objection and allowed the prosecutor to elicit from Cooper what Detective

Markowski said when Cooper asked if he should talk to an attorney. Later, when Detective Markowski testified, the prosecutor asked him, without further objection from Defendant, what he told Cooper when Cooper asked him if he should talk to a lawyer before providing a written statement, and Markowski then related the statement he made to Cooper quoted above.

{¶ 95} The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Sage* (1987), 31 Ohio St.3d 173.

{¶ 96} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 97} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 98} "'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid.R. 801(C)).  "In cases in which words have independent legal consequences, the words are relevant without regard to their truth, and as such, statements are not hearsay, . . . (because) relevancy attaches to the making of the statement rather than the truth of the statement."  Weissenberger's Ohio Evidence Treatise (2010 Ed.), §801.8.

{¶ 99} The credibility of every witness who testifies under an oath to the tell the truth is always in issue.  Detective Markowski's statement that  "liars 'lawyer-up'" was not offered to prove its truth, but to attack Cooper's credibility by showing that he then said he wanted to talk to a lawyer.  The statement was relevant for that limited purpose, Evid.R. 401, and was therefore admissible.  Evid.R. 402.  The trial court did not abuse its discretion in admitting the evidence for the limited purpose of impeaching Cooper's credibility.

{¶ 100} Defendant did not request an instruction that the jury should not consider Markowski's statement for the truth of the matter asserted.  Such an instruction would have exposed the preposterous character of the State's effort to impeach Cooper on that basis.  Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially

outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." We believe all of those would apply in this instance. However, Defendant did not articulate that particular objection.

{¶ 101} The second assignment of error is overruled.

### THIRD ASSIGNMENT OF ERROR

{¶ 102} "IT IS ERROR FOR THE COURT, IN THE PERSON OF A JUDGE WHO WAS NOT THE TRIAL JUDGE, TO OVERRULE DEFENDANT'S MOTION FOR A MISTRIAL, THE MOTION BEING BASED ON THE TRIAL JUDGE ALLOWING HIGHLY PREJUDICIAL TESTIMONY OF A DETECTIVE'S STATEMENT WHEN SAID DECISION BY THE FILL-IN JUDGE TO OVERRULE IS BASED ON THE FILL-IN JUDGE FINDING THAT THE TRIAL JUDGE HAD, 'IN HIS EVIDENTIARY RULINGS, ALLOWED THAT TESTIMONY' (TRIAL TRANSCRIPT P. 300) WHERE THE FILL-IN JUDGE DID NOT REQUEST TO HEAR THE TRIAL JUDGE'S WORDS AND DID NOT KNOW FROM THE RECORD THAT THE TRIAL JUDGE HAD DEFERRED RULING ON DEFENDANT'S OBJECTION AT THE TIME IT WAS MADE DURING TRIAL AND HAD NEVER 'ALLOWED THAT TESTIMONY' WITH AN EVIDENTIARY RULING. TRIAL TRANSCRIPT P. 200."

{¶ 103} Defendant argues that the "stand-in judge," Judge Tucker, who was temporarily filling in for Judge Singer, who presided over the trial in this case, abused his discretion by ruling on Defendant's motion for a mistrial without first reviewing the record of the trial.

{¶ 104} During the second day of deliberations the jury sent

a note to the trial court indicating that they were unable to reach an agreement on a verdict. At that time, Judge Singer, who presided over the trial, was out of the office on other business. In his absence, Judge Tucker handled the issue. Before Judge Tucker brought the jury in to the courtroom, he discussed the matter with counsel. During that discussion, Defendant moved for a mistrial on unrelated grounds, because the trial court had earlier admitted the statement Detective Markowski made to Dustin Cooper concerning whether Cooper should talk to an attorney before providing a written statement to police. Defendant argued that Markowski's statement indicated to the jury that if you seek a lawyer, then you're lying, and on that basis he was moving for a mistrial. Judge Tucker, without investigating the issue or reviewing the record, ruled as follows:

{¶ 105} "THE COURT: All right. And obviously Judge Singer, in his evidentiary rulings, allowed that testimony --

{¶ 106} "MR. HARRISON: Correct.

{¶ 107} "THE COURT: and I certainly understand, Jack, why you are at this point making the motion for a mistrial. But on the other hand, I'm simply going to confirm that which Judge Singer has already done in allowing that testimony. And based upon that, I will obviously overrule the motion for a mistrial.

{¶ 108} "MR. HARRISON: Of course." (T. 300)

{¶ 109} The grant or denial of an order of mistrial lies within

the sound discretion of the trial court. *State v. Glover* (1988), 35 Ohio St.3d 18. Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. *State of Franklin* (1991), 62 Ohio St.3d 118.

{¶ 110} A review of this record discloses that Defendant moved for a mistrial simply to preserve that issue for appeal. When Judge Tucker voiced his understanding that defense counsel just wanted to make his record, defense counsel responded: "Right." In any event, as we concluded in overruling the second assignment of error, the error in the trial court's ruling admitting Detective Markowski's statement to Dustin Cooper concerning whether Cooper should talk to a lawyer before providing a written statement to police was harmless beyond a reasonable doubt. Accordingly, Defendant's motion for a mistrial lacked merit. No abuse of discretion on the part of Judge Tucker in overruling Defendant's motion for a mistrial has been demonstrated.

{¶ 111} Defendant's third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

{¶ 112} "IT IS ERROR FOR A JUDGE TO GIVE THE 'DYNAMITE CHARGE' TO THE JURY WHEN THAT JUDGE, HAVING NOT BEEN PRESENT AT TRIAL, HAS NO BASIS FOR ASSESSING WHETHER AN IMPASSE REPORTED BY THE JURY WARRANTS THAT CHARGE. THE STAND-IN JUDGE, NOT BEING PRESENT AT THE TRIAL, DID NOT KNOW THE COMPLEXITY OF THE ISSUES FOR THE JURY TO DELIBERATE ON, THEREFORE, IT WAS AN ABUSE OF THAT STAND-IN

JUDGE'S DISCRETION TO USE HIS DISCRETION AT ALL."

{¶ 113} Defendant argues that the "stand-in judge," Judge Tucker, erred by giving the deadlocked jury the so called *Howard* or "dynamite" charge, because he had no knowledge of the complexity of this case which Defendant contends must be considered in determining whether a supplemental charge is warranted.

{¶ 114} Judge Singer was the presiding judge in this case who heard all of the evidence presented at trial. During the second day of deliberations, the jury sent a note to the trial court indicating that they were unable to reach a unanimous verdict. At that time, Judge Singer was out of the office because of another commitment. In his absence, Judge Tucker, who Defendant refers to as the "stand-in judge," ruled on the issue.

{¶ 115} Judge Tucker discussed the matter with counsel for both parties and indicated his intention to give the jury the so called "dynamite" charge approved by the Ohio Supreme Court in *State v. Howard* (1989), 42 Ohio St.3d 18, and which has been made a part of Ohio Jury Instructions, CR429.09. When asked by the court if he had any objections, defense counsel responded, "No." At that point Judge Tucker brought in the jury and gave them the *Howard* charge that encourages a deadlocked jury to continue deliberations and render a verdict if they can conscientiously do so.

{¶ 116} In *Howard*, the Ohio Supreme Court rejected the traditional *Allen* charge (*Allen v. United States* (1896), 164 U.S.

492, 17 S.Ct. 154, 41 L.Ed.528), as a proper supplemental charge to be given to juries that have become deadlocked on the question of conviction or acquittal, because the *Allen* charge lacks balance and is coercive upon minority jurors to agree with the majority jurors. In place of the *Allen* charge, the Supreme Court in *Howard* fashioned and approved a new supplemental instruction that encourages a verdict if one can conscientiously be reached, and is fairly balanced, asking all jurors to reconsider their opinions in light of the fact that others do not agree.

{¶ 117} Defendant concedes in his appellate brief that the supplemental charge given to the deadlocked jury in this case by Judge Tucker was given using neutral, non-coercive language that comports with the requirements of law and the recommended instruction set forth in *Howard*. Defendant argues, however, that Judge Tucker nevertheless erred by giving the supplemental *Howard* charge because, not being the presiding judge at trial, he had no knowledge of the simplicity or complexity of the case.

{¶ 118} In support of his argument that the complexity of a case plays a role in a trial judge's determination of when the "dynamite" charge is warranted, Defendant relies upon *State v. Maupin* (1975), 42 Ohio St.2d 473, 487. Defendant's reliance is misplaced. An examination of that decision reveals that the Supreme Court mentioned the simplicity of the issues the jury had to determine, not as a factor that must be considered before a

supplemental instruction may be given to a deadlocked jury, but rather as one of several reasons why the Supreme Court was rejecting Maupin's claim that the supplemental charge was prematurely given. *Id.*, at p. 486-487. We are not aware of any case law that requires a trial judge to consider the simplicity or complexity of the issues for jury determination before deciding whether to give a supplemental *Howard* charge to a deadlocked jury. We see no error, much less plain error, on the part of Judge Tucker in giving this deadlocked jury the supplemental *Howard* charge.

{¶ 119} Defendant's fourth assignment of error is overruled.

FIFTH ASSIGNMENT OF ERROR

{¶ 120} "THE DECISION OF THE JURY WAS ERRONEOUS AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THE EVIDENCE IN THIS CASE WEIGHS HEAVILY AGAINST THE CONVICTION, AND THE JURY'S DECISION WAS NOT CONSISTENT WITH THE EVIDENCE OFFERED AT TRIAL."

{¶ 121} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle* (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175:

{¶ 122} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the

evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  Accord: *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52.

{¶ 123} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve.  *State v. DeHass* (1967), 10 Ohio St.2d 230. In *State v. Lawson* (August 22, 1997), Montgomery App. No. 16288, we observed:

{¶ 124} "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility.  The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."

{¶ 125} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.  *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 126} In arguing that the verdict is against the manifest weight of the evidence and that the jury lost its way, Defendant

claims that there was no physical evidence linking him to the alleged crime. As for the testimony of the victim, Defendant points out that the jury found him not guilty of rape, which suggests that the jury did not believe the victim's testimony that Defendant penetrated her vagina with his fingers. Yet, the jury had to find the victim's testimony that Defendant tried unsuccessfully to penetrate her vagina with his penis credible in order to find him guilty of attempted rape. According to Defendant, this shows the jury "lost its way."

{¶ 127} Defendant also points out that Dustin Cooper, who was sitting in the living room while Defendant and the victim were upstairs together, testified that he didn't hear any noise at all, despite the victim's claim that she and Defendant wrestled around and fell onto the floor. Furthermore, Cooper saw the victim when she and Defendant came back downstairs, and noticed that she seemed fine, was not crying or emotional, her hair wasn't messed up, and he didn't see any red marks.

{¶ 128} On the other hand, the victim's testimony about what transpired was corroborated by photos showing red marks on her body, by the testimony of the sexual assault nurse who found traumatic injury to the victim's cervix consistent with digital penetration, and by the testimony of the victim's neighbors regarding the victim's highly upset and emotional state just after the sexual assault occurred.

{¶ 129} The jury did not lose its way in this case simply because it chose to believe the State's witnesses rather than Defendant's, which it had a right to do. The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts to decide. *State v. DeHass*, supra.

{¶ 130} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.

{¶ 131} Defendant's fifth assignment of error is overruled.

SIXTH ASSIGNMENT OF ERROR

{¶ 132} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE

{¶ 133} UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶ 134} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arose from counsel's performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by

counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. *Id., State v. Bradley* (1989), 42 Ohio St.3d 136.

{¶ 135} Defendant first claims that his counsel performed deficiently because his questioning of the witnesses was inartful and led to several objections that were sustained.  For example, while cross-examining the victim, M.B., counsel referred to Dustin Cooper by the wrong name and had to be corrected by the prosecutor.  Defendant does not even argue, much less demonstrate, how these mistakes by counsel prejudiced him.  Absent a demonstration of a reasonable likelihood that the outcome of this trial would have been different but for counsel's errors, ineffective assistance of counsel has not been demonstrated.

{¶ 136} Defendant next claims that his counsel performed deficiently by failing to call Defendant's girlfriend to corroborate his testimony that Defendant was not drunk, and to contradict  M.B.'s denial that she told Defendant's girlfriend that the hospital found semen on her leg.  The record before us in this appeal does not demonstrate what Defendant's girlfriend would have testified to had she been called as a defense witness.  Accordingly, deficient performance by counsel in failing to call her as a witness has not been demonstrated.

{¶ 137} Finally, Defendant claims that his counsel performed

deficiently by failing to properly object (1) when the prosecutor elicited from Dustin Cooper the statement Detective Markowski made to Cooper in response to Cooper's question whether he should speak with a lawyer before providing a written statement to police, and (2) when the "stand-in" judge gave the *Howard* "dynamite" charge to the deadlocked jury.  As we discussed earlier in overruling the second and fourth assignments of error, any error on the part of the trial court in admitting Detective Markowski's statement to Cooper was harmless beyond a reasonable doubt, and the "stand-in judge," Judge Tucker, did not commit error, much less plain error, by giving the deadlocked jury the supplemental "dynamite" charge approved by the Ohio Supreme Court in *Howard, supra*.  Therefore, defense counsel did not perform deficiently by failing to object to those matters, and Defendant has failed to demonstrate that he suffered any prejudice resulting from counsel's failure to object.  Ineffective assistance of counsel has not been demonstrated.

{¶ 138} Defendant's sixth assignment of error is overruled. The judgment of the trial court will be affirmed.


FAIN, J. And DONOVAN, J., concur.


Copies mailed to:

R. Lynn Nothstine, Esq.

Don Brezine, Esq.
Hon. Gregory F. Singer