[Cite as *State v. Jones*, 2011-Ohio-4013.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :    C.A. CASE NO. 24075

vs.                              :    T.C. CASE NO. 09CR2740/1

BRANDON D. JONES                 :    (Criminal Appeal from
                                         Common Pleas Court)

    Defendant-Appellant        :

. . . . . . . . .

O P I N I O N

Rendered on the 12th day of August, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Andrew T. French, Atty. Reg. No.0069384, Asst. Pros. Attorney, P.O. Box 972, Dayton, OH 45422
    Attorneys for Plaintiff-Appellee

Christopher W. Thompson, Atty. Reg. No.0055379, 130 W. Second Street, Suite 2050, Dayton, OH 45402
    Attorney for Defendant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Brandon Jones, appeals from his conviction and sentence for aggravated robbery and possession of crack cocaine.

{¶ 2} On August 21, 2009, between 3:00 and 4:00 a.m., Antanyis

Alston stepped outside his brother's apartment at 2905 Wexford Place in Dayton to smoke a cigarette. While outside, Alston was beaten and robbed by three men. Defendant, who Alston recognized from the neighborhood and knew only as "B," pointed a gun at Alston and demanded that Alston "give him everything." Defendant and his accomplices took Alston's money, cigarettes, cell phone and other items. Defendant pistol whipped Alston. Another of the men Alston knew as "D'AK" hit Alston with a mop. The third man, who Alston did not know, punched Alston. Finally, Defendant fired a shot into the ground near Alston's feet before all three suspects ran off.

{¶ 3} Alston's brother, Kion, was inside his apartment and heard the gunshot. When Kion Alston opened the door, he saw Antanyis Alston's face was injured and that he was bleeding. Kion Alston told his brother to run to their sister's house in case the assailants returned. Antanyis Alston called his sister, Monique Boykin, told her what had happened, and then ran over to her house, which was only ten minutes away by foot. After Alston arrived at Boykin's house, paramedics were called and they took Alston to the hospital. Alston talked with Dayton police at the hospital, and from the information Alston provided police began searching for D'Akshun Winston, whom police found and arrested the next day. Alston's cell phone was found in Winston's pocket.

{¶ 4} Alston was subsequently shown a set of photographs by Detective Ritchey in an effort to identify the person Alston knew as "B." Alston identified Defendant as "B," the gunman who pistol whipped him and fired the shot. After his arrest, Defendant admitted to police that he hangs around the neighborhood where Alston was robbed and that he knows "D'AK," but he denied any involvement in Alston's robbery. Defendant was unable to recall where he was at the time of the robbery.

{¶ 5} Defendant was indicted on one count of aggravated robbery, R.C. 2911.01(A)(1), with a three year firearm specification, R.C. 2941.145, and one count of possessing crack cocaine, less than one gram, in violation of R.C. 2925.11(A). Following a jury trial, Defendant was found guilty of the aggravated robbery charge and the firearm specification. Defendant subsequently entered a guilty plea to the cocaine possession charge. The trial court sentenced Defendant to three years on the aggravated robbery charge, plus an additional and consecutive three years on the firearm specification. The court imposed a concurrent six months sentence on the cocaine possession charge, for a total sentence of six years.

{¶ 6} Defendant timely appealed to this court.

**FIRST ASSIGNMENT OF ERROR**

{¶ 7} "THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE."

{¶ 8} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle* (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175:

{¶ 9} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52.

{¶ 10} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230. In *State v. Lawson* (August 22, 1997), Montgomery App. No. 16288, we observed:

{¶ 11} "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the fact finder's

determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witness."

{¶ 12} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 13} Defendant argues that his conviction for aggravated robbery in violation of R.C. 2911.01(A)(1) is against the manifest weight of the evidence because it is based entirely upon the testimony of the victim, Antanyis Alston, which is inconsistent, contradicts the testimony of other witnesses, and not worthy of belief.

{¶ 14} The pivotal issue at Defendant's trial was whether he was one of the three assailants who robbed and beat Antanyis Alston. Defendant argues that since there was no physical evidence or other witnesses that corroborated Alston's identification of Defendant, and because Alston's testimony was not worthy of belief, the jury lost its way in finding Defendant guilty.

{¶ 15} Alston consistently acknowledged from the beginning that he did not know Jones' real name, but that he had seen him in the

neighborhood several times, recognized him, and knew him as "B."  In talking with police, Defendant admitted that he hangs around the neighborhood where this robbery occurred.  Alston's sister, Monique Boykin, confirmed that when Alston called to tell her that he had been beaten and robbed, he said: "'B' hit me with a gun."  The next day Alston positively identified Defendant from photographs as "B," one of the three assailants who beat and robbed him.

{¶ 16} In attempting to discredit Alston's identification of him, Defendant points out that Alston's brother, Kion, testified that Alston never told him the names of the persons who robbed him.  That is understandable given that Alston did not know their real names.  Defendant further points to the testimony of Officer Watkins that while speaking with Alston at the hospital, Alston gave the name "D'AK," but was unable to give the names of any of the other assailants.  Alston acknowledged, however, that he provided only descriptions of the other two assailants because he did not know their real or street names.

{¶ 17} Defendant argues that Alston's testimony was inconsistent regarding the place where this robbery occurred.  Alston consistently testified that he was robbed outside his brother's apartment, which is in the Hilltop Homes neighborhood.  Alston's brother, Kion, testified that he heard a gunshot outside

his door at 2905 Wexford Place, which is in the Hilltop Homes neighborhood, and when he opened the door Alston, who had been beaten, told him he had just been robbed. Alston's sister, Monique Boykin, testified that Alston told her he had been robbed outside his brother's apartment. It was Officer Watkins who gave conflicting testimony regarding what Watkins remembered Alston saying about where the robbery took place. In any event, where the robbery took place has little or nothing to do with the reliability of Alston's identification of Defendant as one of the perpetrators.

{¶ 18} With respect to the time of the robbery, Alston consistently testified that it occurred between 3:00 and 4:00 a.m. on August 21, 2009. Alston's brother, Kion, testified that he heard the gunshot around 4:00 a.m. Alston's sister, Monique Boykin, testified that Alston called her between 3:00 and 4:00 a.m. and told her about the robbery that had just happened. It was Officer Watkins who created a conflict in the time frame by testifying that he was dispatched at 8:46 a.m. Once again, this has little or nothing to do with the reliability of Alston's identification of Defendant as one of the assailants.

{¶ 19} Finally, even assuming that Alston did misidentify a person from some photographs as the third assailant, whom Alston consistently claimed he had never seen before and did not know,

Alston nevertheless did not misidentify Defendant or D'AK, persons he knew and recognized.

{¶ 20} Defendant also points to other inconsistencies in Alston's testimony and conflicts between Alston's testimony and the testimony of other witnesses. Those matters are peripheral to the critical issue: whether Alston was beaten and robbed by Defendant. The jury resolved the issue of Alston's credibility in his favor. We find no basis to disturb that finding.

{¶ 21} The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury, to decide. *DeHass*. The jury did not lose its way simply because it chose to believe the State's witnesses and theory of the case, rather than Defendant's, which it had a right to do. *Id*.

{¶ 22} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction for aggravated robbery is not against the manifest weight of the evidence.

{¶ 23} Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 24} "THE DEFENDANT-APPELLANT RECEIVED INEFFECTIVE

ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL."

{¶ 25} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arose from counsel's performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. *Id., State v. Bradley* (1989), 42 Ohio St.3d 136.

{¶ 26} Detective Ritchie testified on cross-examination that when Officer Watkins showed Alston photographs in an attempt to identify his third assailant, Alston chose an individual who turned out not to be the correct person. Defendant claims that his trial counsel performed deficiently by failing to introduce the photospread that was the subject of Alston's misidentification of the third assailant, and further by failing to cross-examine Alston and Officer Watkins about that misidentification. Defendant argues that the key piece of evidence to attack Alston's identification of him was the photospread from which the misidentification of the third assailant was made, because that

exhibit undermines the reliability of the State's only identification witness. That evidence was never introduced at trial, however.

{¶ 27} The jury was made aware of the fact of Alston's misidentification of the third assailant. Any relevance the evidence concerning Alston's misidentification might have in terms of negatively impacting the reliability of Alston's identification of Defendant as one of his assailants would be marginal at best, given that Defendant consistently maintained that he had never seen the third assailant before and did not know him, but that he had seen Defendant several times before in the neighborhood and knew him as "B." Defendant's contention about what might have happened had defense counsel introduced the photographs associated with Alston's misidentification of the third assailant is too speculative to demonstrate that Defendant was prejudiced by counsel's failure.

{¶ 28} Defendant has failed to demonstrate deficient performance by defense counsel, much less that but for counsel's failure to introduce the photographs connected to Alston's misidentification of the third suspect, Defendant would have been found not guilty. No prejudice, as defined by *Strickland,* has been demonstrated.

{¶ 29} Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

{¶ 30} "THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING PORTIONS OF THE TRANSCRIPT TO BE READ TO THE JURY DURING DELIBERATIONS THEREBY DENYING APPELLANT'S SIXTH AMENDMENT RIGHT TO A FAIR TRIAL."

{¶ 31} During deliberations the jury sent a note to the trial court asking to have read to them Alston's testimony from the start of his direct examination to the point where he testifies that D'AK said: "Kill that n---a."  The jury also requested all cross-examination of Alston concerning the gun.  Over Defendant's objection, the trial court had the court reporter read to the jury the requested portions of Alston's testimony.

{¶ 32} Defendant argues that the trial court abused its discretion  because, by reading only a portion of Alston's testimony to the jury, the trial court unfairly emphasized that portion of Alston's testimony, to the exclusion of other portions of Alston's testimony that Defendant claims were inconsistent and contradictory.

{¶ 33} A trial court possesses broad discretion in deciding whether to permit a jury to re-hear all or part of a witness's testimony during its deliberations. *State v. Frazier*, Clark App. No. 2008CA0118, 2010-Ohio-1507 at ¶53, citing *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶123.  Absent an abuse of

discretion, a reviewing court may not reverse the trial court's decision. *Id.*

{¶ 34} "Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 35} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 36} Defendant argues that the testimony read to the jury unfairly prejudiced him because it clearly implies that Alston knew Defendant's name, when other portions of Alston's testimony that were not read to the jury clearly demonstrate that Alston did not know Defendant's name until after he had identified Defendant from photographs and Detective Ritchie told Alston Defendant's name.

{¶ 37} The critical issue was whether Alston recognized Defendant as one of the perpetrators of this crime and could identify him as such, not whether he knew Defendant's real or street name. Furthermore, the request to have this portion of Alston's testimony re-read was made by the jury, which determined that it would be helpful to their deliberations. This is not a case where the trial court on its own emphasized or pointed the jury to anything particular in Alston's testimony.

{¶ 38} The jury's request was detailed, seeking very specific parts of Alston's testimony, and the trial court strictly limited its response to what was requested by the jury. The trial court acted well within its discretion in allowing the portions of Alston's testimony requested by the jury to be re-read to the jury. No abuse of discretion is demonstrated.

{¶ 39} Defendant's third assignment of error is overruled.

**FOURTH ASSIGNMENT OF ERROR**

{¶ 40} "THE TRIAL COURT ERRED IN DISAPPROVING SHOCK INCARCERATION, INTENSIVE PROGRAM PRISON AND TRANSITIONAL CONTROL ARGUMENT."

{¶ 41} Defendant argues that the trial court erred in disapproving shock incarceration, intensive program prison, and transitional control, and that the court further erred in not putting its reasons for the disapproval on the record. See: *State*

*v. Howard*, Montgomery App. No. 23815, 2010-Ohio-5283.

{¶ 42} At the sentencing hearing and again in its judgment entry of conviction, the trial court did not "disapprove" Defendant for shock incarceration, intensive program prison and transitional control, and then fail to put its reasons for the disapproval on the record. Rather, the court concluded that Defendant was "not eligible" for shock incarceration, intensive program prison, or transitional control.

{¶ 43} R.C. 5120.032(B)(2)(a) provides that a prisoner who is serving a prison term for a felony of the first degree is not eligible to participate in an intensive program prison. Defendant was convicted and sentenced for aggravated robbery, a felony of the first degree. R.C. 2911.01(C). Therefore, as the trial court correctly found, Defendant is not eligible for intensive program prison.

{¶ 44} R.C. 5120.031(A)(4) indicates that a person is not eligible for shock incarceration if he is ineligible to participate in an intensive program prison under R.C. 5120.032. As stated above, Defendant is not eligible to participate in an intensive program prison. Therefore, as the trial court correctly found, Defendant is not eligible for shock incarceration.

{¶ 45} R.C. 2967.26(A)(1)(b) provides that no prisoner who is serving a mandatory prison term is eligible for the transitional

control program until after expiration of the mandatory term. Defendant was sentenced to a mandatory three year prison term on the firearm specification attached to the aggravated robbery charge. Accordingly, Defendant is not eligible for transitional control until after his completion of the mandatory three year term, and therefore at the time of sentencing Defendant was, as the trial court correctly found, ineligible for transitional control.

{¶ 46} In *State v. Howard*, supra, we held that the trial court erred by disapproving transitional control in the judgment entry of conviction because the court is able to approve or disapprove transitional control only after a person has been incarcerated and the adult parole authority sends the required three weeks' notice to the trial court indicating its intention to grant transitional control. *Id.*, at ¶2, 40-44. In the present case, the court instead held that Defendant is not eligible, which is correct. After Defendant completes his mandatory three year prison term on the firearm specification, and if and when the trial court receives notice that the adult parole authority intends to grant Defendant transitional control, the trial court will have an opportunity at that appropriate time to approve or disapprove transitional control.

{¶ 47} Defendant's fourth assignment of error is overruled.

The judgment of the trial court will be affirmed.


HALL, J. And DONOFRIO, J., concur.


(Hon. Gene Donofrio, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)


Copies mailed to:

Andrew T. French, Esq.
Christopher W. Thompson, Esq.
Hon. Dennis J. Langer