[Cite as *State v. Mays*, 2012-Ohio-838.]


# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24168 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2009-CR-1322 |
| v. | : | |
| | : | |
| CHAMARE H. MAYS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of March, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, Post Office Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

STEPHEN P. HARDWICK, Atty. Reg. #0062932, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400,Columbus, Ohio 43215
        Attorney for Defendant-Appellant

J. DAVID TURNER, Atty. Reg. #0017456, Post Office Box 291771, Kettering, Ohio 45429-1771
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Chamare Mays appeals his conviction and sentence, assigning four errors to

the trial court. First, Mays alleges that the trial court erred by convicting him of felony murder based on felonious assault, contending that the independent-felony or merger limitation, which he asserts exists under Ohio common law, precludes felonious assault from serving as the underlying offense for felony murder. Second, Mays alleges that the trial court erred by imposing court costs in the termination entry without mentioning them at the sentencing hearing. Third, he alleges that the trial court erred by using the termination entry to disapprove transitional control. Finally, Mays alleges that the trial court erred by imposing consecutive prison terms. The second and third allegations have merit, so we affirm in part and reverse in part.

## A. Facts and Procedural History

{¶ 2}    In April 2009, Mays and two others entered Dayton's College Hill Park with guns in hand and began shooting at a group of men playing basketball. One man was hit in the face and died at the scene. Another took off running and Mays gave chase. Mays continued shooting and succeeded in hitting the second man's leg. While Mays denies being the one who fired the fatal shot, he admits the rest.

{¶ 3}    Mays was indicted on two counts of felonious assault with a deadly weapon, one count of felonious assault causing serious physical harm, two counts of felony murder (proximately resulting from felonious assault with a deadly weapon and proximately resulting from felonious assault causing serious physical harm), one count of tampering with evidence, one count of having weapons while under a disability, and one count of inducing panic. With the exception of the last, attached to each count was a firearm specification. At Mays' first trial, he was found guilty of one count of felonious assault with a deadly weapon, tampering

with evidence, inducing panic, and having weapons while under disability. On the remaining counts, the jury failed to reach a verdict and a mistrial was declared. At the second trial, a jury found Mays guilty of the remaining counts.

{¶ 4} The trial court sentenced Mays to an aggregate 40 years to life in prison. For the non-fatal felonious assault with a deadly weapon, tampering with evidence, having a weapon while under disability, and inducing panic, the court imposed consecutive prison terms, totaling 19 years. The court merged the firearm specifications into two groups and imposed consecutive 3-year terms, totaling 6 years. Finally, the court merged the fatal felonious-assault-with-a-deadly-weapon count, the felonious-assault-causing-serious-physical-harm count, and the count charging felony murder proximately resulting from felonious-assault causing serious physical harm into the count charging felony murder proximately resulting from felonious assault with a deadly weapon,[1] and, for the murder, sentenced Mays to prison for 15 years to life.[2]

## B. The Felony-Murder Conviction

{¶ 5} Mays alleges, in the first assignment of error, that the trial court erred by convicting him of felony murder. He contends that felonious assault may not serve as the underlying offense. Mays claims that because his felonious assault directly resulted in the

---

[1] Allied offenses merge for sentencing. R.C. 2941.25(A). Allied offenses are those "committed by the same conduct." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶48-50. Here, the simultaneous commission of the two varieties of felonious assault and the resulting felony murders were the result of the same conduct. *Compare id.* at ¶53-57 (holding that felony murder under R.C. 2903.02(B) based on the simultaneous commission of the predicate offense of child endangering (serious harm) were allied offenses for this reason).

[2] "It is the state that chooses which of the allied offenses to pursue at sentencing." (Citation omitted.) *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶20.

victim's death the felony-murder rule's independent-felony or merger limitation precludes it from serving this role. We conclude that this limitation does not exist under Ohio law.

{¶ 6} "The classic felony-murder rule held that a death caused during the commission of any felony constitutes murder." Tomkovicz, *The Endurance of the Felony-Murder Rule: A Study of the Forces that Shape Our Criminal Law*, 51 Wash. & Lee L. Rev. 1429, 1465 (1994); *see* Dressler, *Cases and Materials on Criminal Law*, Chapter 7, Section (D)(1)(a), at 309-310 (4th Ed.2007) ("In its classic form, the operation of the rule follows a compellingly simply, almost mathematical, logic: a felony + a killing = a murder."). "At common law, murder was the unlawful killing of a human being with malice aforethought: an intentional killing with expressed malice." *State v. Dixon*, 2d Dist. Montgomery No. 18582, 2002-Ohio-541, 2002 WL 191582, *4, citing Katz and Gianelli, *Criminal Law*, Section 95.2 (1996). New York's highest court has explained the rule this way:

> The very purpose of the felony murder doctrine is to utilize the underlying felony as a substitute for the defendant's murderous intent and thereby raise an unintentional killing to the level of murder. As we said in *People v Hernandez* (82 NY2d 309, 317 [1993]), "The basic tenet of felony murder liability is that the mens rea of the underlying felony is imputed to the participant responsible for the killing. By operation of that legal fiction, the transferred intent allows the law to characterize a homicide, though unintended and not in the common design of the felons, as an intentional killing."

> The felony murder concept was derived from the common law, at which no intent to kill was necessary. It was enough that the victim was killed

while the accused was engaged in the commission of a felony. Under the common law, the felonious intent was imputed to the committed act, and, if it were homicide, made it murder. (Citations omitted.) *People v. Cahill*, 2 N.Y.3d 14, 67, 809 N.E.2d 561 (2003).

Thus "the intent to kill is conclusively presumed as long as the state proves the required intent to commit the underlying felony." (Citation omitted.) *State v. Walters*, 10th Dist. Franklin No. 06AP-693, 2007-Ohio-5554, ¶ 61.

{¶ 7} Because it requires no proof of intent to kill, the felony-murder rule has generated criticism. One commentator has said that "few legal doctrines have been as maligned and yet have shown as great a resiliency as the felony-murder rule. * * * Despite the widespread criticism, the felony-murder rule persists in the vast majority of states." Roth & Sundby, *The Felony-Murder Rule: A Doctrine at Constitutional Crossroads*, 70 Cornell L. Rev. 446, 446 (1985). But the rule does not persist in its classic form. "In most places, the rule is cabined in a number of ways." Tomkovicz, 51 Wash. & Lee L. Rev. at 1467.

{¶ 8} One way that developed to cabin the rule is the independent-felony or merger limitation. This limitation "precludes certain particularly dangerous felonies–the archetype is assault with a deadly weapon–from qualifying [as the underlying felony]." *Id*. It requires that "the underlying felony be independent of the killing." *Dixon*, 2002 WL 191582, at *4, citing Katz and Gianelli, at Section 95.2. As the California Supreme Court has explained, the limitation "is premised upon the concern that it 'would subvert the legislative intent for a court to apply the felony-murder rule automatically to elevate all felonious assaults resulting in death to second degree murder even where the felon does not act with malice.'" *People v.*

*Robertson*, 34 Cal.4th 156, 170, 95 P.3d 872 (2004), quoting *People v. Hansen*, 9 Cal.4th 300, 314, 885 P.2d 1022 (1994). "'In other words, if the felony-murder rule were applied to felonious assaults, all such assaults ending in death would constitute murder, effectively eliminating the requirement of malice.'" *Id*., quoting *Hansen* at 314. In those jurisdictions which have applied the independent-felony or merger rule, a felonious assault that is an integral element of the homicide cannot be the predicate felony to support the felony murder.[3]

{¶ 9}  In 1998, the Ohio General Assembly added the felony-murder provision, R.C. 2903.02(B), to Ohio's murder statute. The provision pertinently states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." Before this provision was added, murder in Ohio concerned only purposeful killings. *State v. Franklin*, 7th Dist. Mahoning No. 06-MA-79, 2008-Ohio-2264, ¶ 103; see R.C. 2903.02(A) (defining murder as "purposely" causing death). Killings that occurred as a proximate result of a felony fell under the involuntary-manslaughter statute, R.C. 2903.04.

{¶ 10}  While it may be that "most jurisdictions apparently follow some form of the 'merger' doctrine," Tomkovicz, 51 Wash. & Lee L. Rev. at 1467, Ohio does not. Unlike in some states, in Ohio all crimes are statutory. R.C. 2901.03. We agree with the Ninth District Court of Appeals that "in adopting R.C. 2903.02(B) the General Assembly rejected the independent felony/merger doctrine," *State v. Cherry*, 9th Dist. Summ No. 20771, 2002-Ohio-3738, ¶ 27. We further agree that "R.C. 2903.02(B) evidences a clear legislative

---

[3] See discussion at *State v. Freeze*, 2d Dist. Clark No. 2421, 1990 WL 212671, *3 (Dec. 21, 1990). However, in *Freeze*, before codification of felony murder in R.C. 2903.02(B), this court rejected a defendant's argument that the merger rule barred the use of felonious assault as the predicate offense for involuntary manslaughter.

intent to subject those who commit the most serious felonies to liability for murder, where commission of those felonies results in death." *Id*. at ¶ 43. As the First District has observed, "the General Assembly has * * * narrowly defined the scope of felony murder under R.C. 2903.02(B), and related it to the legitimate purpose of punishing the taking of human life while committing a separate offense of violence." *State v. Pickett*, 1st Dist. Hamilton No. C-000424, 2001-Ohio-4022, 2001 WL 1591318, *3. The court pointed out that "only eleven first- and second-degree offenses may serve as predicate offenses under this statute." *Id*. The court also said that "the statute does not arbitrarily relieve the state of proving criminal intent, nor does it eliminate the role of the jury as the trier of fact." *Id*. As the Eleventh District has said, "the state [must still] prove[] the required intent to commit the underlying felony." *State v. Hayden*, 11th Dist. Lake No. 99-L-037, 2000 WL 973413, *4 (July 14, 2000). We add that the General Assembly kept the felony-murder provision's scope narrow also by using the phrase "as a proximate result of." We and other courts have concluded that this language indicates that liability for felony murder is based on a theory of proximate cause. *Dixon*, 2002 WL 191582, at *5-6; *Franklin*. Under this theory,

> generally, for a criminal defendant's conduct to be the proximate cause of a certain result, it must first be determined that the conduct was the cause in fact of the result, meaning that the result would not have occurred "but for" the conduct. Second, when the result varied from the harm intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable. *Id*. at *6, quoting *State v.*

*Lovelace*, 137 Ohio App.3d 206, 216, 738 N.E.2d 418 (1st Dist.1999), citing

LaFave and Scott, *Criminal Law*, Section 35, at 246 (1972).

Thus, although the felony-murder provision contains no separate proof of a culpable mental state, it limits criminal liability to only those deaths that occur "within the scope of a culpably imposed risk," Binder, *Making the Best of Felony Murder*, 91 B.U. L. Rev. 403, 484 (2011), citing Wayne R. LaFave, *Criminal Law* 376-378 (5th Ed.2010).

{¶ 11} Felonious assault and felony murder require proof of different facts, as the Ohio Supreme Court has pointed out. In *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, the defendant was found guilty of felony murder predicated on felonious assault. There, the evidence showed that the defendant fired a handgun at his wife at close range and hit her in the head. She died from her injuries. The pertinent issue was "whether felony murder as defined in R.C. 2903.02(B) is supported by evidence that establishes that the defendant shot the victim knowingly when the underlying offense of violence charged is felonious assault." *Id*. at ¶ 20. The Court held that it was. *Id*. at ¶ 48. Succinctly explaining the different proof requirements in that case, the Court said, "If defendant knowingly caused physical harm to his wife by firing the gun at her through a holster at close range, he is guilty of felonious assault. The fact that she died from her injuries makes him guilty of felony murder, regardless of his purpose." *Id*. at ¶ 33. We note too the Court's dismissal of the defendant's concern that, "since felony murder has a lesser mens rea standard (knowingly) than murder (purposely), and since the two crimes carry the same punishment, prosecutors will now seek murder convictions under the felony murder statute based on felonious assault." *Id*. at ¶ 34. In addition to pointing out that "prosecutors can still charge in the alternative and

generally seek an indictment most aligned with the facts of the case," *id*., the Court said that this is a legislative concern: "the General Assembly has chosen to define felony murder in this manner, and the General Assembly is presumed to know the consequences of its legislation." *Id*.

{¶ 12}  Finally, the absence of the independent-felony or merger limitation is not unconstitutional, as Ohio courts have consistently held. *See Cherry*, 2002-Ohio-3738, at ¶ 31 (finding "that neither R.C. 2903.02(B) nor Appellant's conviction for felony murder where the predicate offense was not independent of the conduct that killed [the victim] are in violation of equal protection or due process guarantees"); *State v. Smathers*, 9th Dist. Summit No. 19945, 2000 WL 1859836, *2-3 (Dec. 20, 2000) (holding that R.C. 2903.02(B) does not violate the Fifth, Sixth, or Fourteenth amendments to the U.S. Constitution because the culpability element of felony-murder is established by proving the intent of the underlying felony); *Pickett*, 2001 WL 1591318, at *3 (holding that "[the defendant]'s conviction under the felony-murder rule of R.C. 2309.02(B), where the predicate offense was the felonious assault of the murder victim, did not deprive him of due process"); *Hayden*, 2000 WL 973413, at *4 (rejecting defendant's argument that R.C. 2903.02(B) is unconstitutional because it violates the independent-felony or merger limitation, and holding that the statute does not violate due process).

{¶ 13}  Mays cites no authority showing that Ohio currently recognizes, or has ever recognized, the independent-felony or merger limitation. Our independent research discloses none either. And, we determine that the absence of such a limitation in the felony murder statute raises no constitutional concerns.

**{¶ 14}**   The first assignment of error is overruled.

## C. Court Costs

**{¶ 15}**   Mays alleges, in the second assignment of error, that the trial court erred by imposing court costs in the termination entry without mentioning them at the sentencing hearing. We agree.

**{¶ 16}**   The Ohio Supreme Court has held "that a court errs in imposing court costs without so informing a defendant in court." *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 1. It is true, as the state says, that if a defendant does not move for waiver of payment at the time of sentencing, "the issue is waived and costs are res judicata." *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, paragraph two of the syllabus. But that assumes the defendant was given an opportunity to seek a waiver. *See Joseph* at ¶ 12-13, citing *Threatt* at paragraph two of the syllabus. A defendant does not have such an opportunity if the trial court fails to mention costs at the sentencing hearing. *Id*. at ¶ 13. We have previously held that when court costs are not mentioned at the sentencing hearing the defendant is denied the opportunity to seek a timely waiver of those costs. *State v. Lunsford* 193 Ohio App.3d 195, 2011-Ohio-964, 951 N.E. 2d 464, ¶ 16 (2d Dist.).

**{¶ 17}**   Here the trial court failed to tell Mays at the sentencing hearing that it was imposing court costs on him. The remedy for this error, which we grant, is remand for the limited purpose of the defendant to seek a waiver of court costs. *See id*.

**{¶ 18}**   The second assignment of error is sustained.

## D. Termination-Entry Disapproval of Transitional Control

**{¶ 19}**   Mays alleges, in the third assignment of error, that the trial court erred by

using the termination entry to disapprove transitional control under R.C. 2967.26. This court has held that this is error, as the state concedes, because "a trial court's ability to approve or disapprove of transitional control occurs only after a person has been incarcerated and the adult parole authority sends a notice to the trial court indicating that it intends to grant transitional control under R.C. 2967.26(A)." *State v. Howard*,190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258, ¶ 2 (2d Dist.).[4] The remedy, which the state urges and which we grant, is remand to amend the termination entry by deleting the statement of disapproval. *State v. Porcher*, 2d Dist. Montgomery No. 24058, 2011-Ohio-5976, ¶ 25.

{¶ 20}   The third assignment of error is sustained.

**E. Consecutive Sentences**

{¶ 21}   Finally, Mays alleges, in the fourth assignment of error, that the trial court erred by imposing consecutive prison terms. He contends that the trial court based its consecutive-terms decision on findings prohibited by the Ohio Supreme Court in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Mays also contends that the trial court's rationale for consecutive terms shows that the court abused its discretion.

{¶ 22}   When *Foster* was decided, R.C. 2929.14(E)(4) provided that consecutive sentences could not be imposed unless the trial judge found additional facts. The judge had to find that "'the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness

---

[4]We note that the termination-entry disapproves of transitional control rather than stating that the defendant is not *eligible* for transitional control. If the latter statement is accurately made, there is no error. *See State v. Jones*, 2d Dist. Montgomery No. 24075, 2011-Ohio-4013, ¶ 46 (distinguishing *Howard* on this basis). Under the current rules, Mays is not eligible for transitional control while serving his mandatory time (R.C. 2967.26(A)(1)(b)) and because he is serving a life sentence (Ohio Admin. Code 5120-12-01(F)(4))

of the offender's conduct and to the danger the offender poses to the public.'" *Id*. at ¶ 65, quoting Former R.C. 2929.14(E)(4). "In addition, at least one of three more findings of fact must be found: that the offender was already under control of the court due to an earlier conviction, that at least two of the offenses were committed as part of a course of conduct and the harm was so great or unusual that no single prison term adequately reflects the seriousness of the conduct, or that '[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public.'" *Id*., quoting Former R.C. 2929.14(E)(4)(c). But in *Foster* the Court severed R.C. 2929.14(E)(4), saying that, after severance, trial courts "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing * * * consecutive * * * sentences." *Id*. at ¶ 100.

{¶ 23} Contrary to Mays's assertion, *Foster* does not prohibit courts from considering these factors. This is apparent from the Court's later discussion of *Foster*'s effect on appellate review of sentencing in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. There the Court said that "*Foster* does not require a trial court to provide *any* reasons in imposing its sentence." (Emphasis added.) *Kalish* at ¶ 12. "For example," said the Court, "when imposing consecutive sentences prior to *Foster*, the trial court had to find that the sentence was necessary to protect the public and was not disproportionate to the seriousness of the offense and the danger the defendant posed to the public. R.C. 2929.14(E)(4). After *Foster*, a trial court can simply impose consecutive sentences, and no reason need be stated." *Id*. But, the Court continued, "although *Foster* eliminated mandatory judicial fact-finding * * *, it left intact R.C. 2929.11 and 2929.12. The trial court must still consider these statutes." *Id*.

at ¶ 13. "R.C. 2929.11 and 2929.12," noted the Court, "are not fact-finding statutes like R.C. 2929.14." *Id*. at ¶ 17. "Instead, they serve as an overarching guide for trial judges to consider in fashioning an appropriate sentence." *Id*. Section 2929.11 states that the twin purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). It also states that a sentence must try to achieve these purposes, "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim." R.C. 2929.11(B). Section 2929.12 instructs courts to consider all factors relating to the seriousness of the offender's conduct and relating to the likelihood of recidivism, including the factors enumerated in the section. One of the enumerated factors, indicating an increased likelihood of recidivism, is that "the offender has a history of criminal convictions." R.C. 2929.12(D)(2).

{¶ 24} Here, while the trial court did not need to explain its consecutive-sentence decision, it did nevertheless. And its explanation reflects the two sentencing statutes:

> Moving now to the consecutive, whether or not these will be consecutive to the sentences handed down * * *, the Court finds that in light of the facts of this case, consecutive sentences are necessary to protect the public from future crimes for the following reasons.

> The evidence supported the fact that there was random rampant gunfire in the middle of the day in a park which by the evidence indicated was peopled by children and others enjoying the park on a–what it was apparently a nice day and random gunfire. It was fortunate that only one person was killed in this.

> And for that reason, the Court believes that consecutive sentences are

necessary to punish the offender for the following–for that reason and also because of the prior record of the Defendant.

The wanton and reckless actions using firearms, that our citizenry needs to be safe in its use of its parks.

Consecutive sentences are not, the Court finds, disproportionate to the seriousness of the offender's conduct and to the [d]anger that the Defendant poses to the public.

\* \* \*

The Defendant has a history of criminal conduct which demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. He has had gun charges in the past and other criminal conduct in his record, prior record, which require this. (Tr. 1256-1257).

**{¶ 25}** Appellate review of sentences involves two steps. First, the reviewing court must determine "whether the sentence is clearly and convincingly contrary to law." *Kalish* at *¶* 4. Here we conclude that the imposition of consecutive sentences is not unlawful. Second, the reviewing court must determine whether the trial court abused its discretion. *Id.* at *¶* 19. "Generally, abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence. \* \* \* In felony sentencing, the sentencing court abuses its discretion if it unreasonably or arbitrarily weighs the factors in R.C. 2929.11 and 2929.12." (Citation omitted.) *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, *¶* 16 (2d Dist.); *see generally State v. Beechler*, Clark No. 09CA54, 2010-Ohio-1900,¶ 60-70 (addressing "the familiar maxim that 'the term "abuse of discretion" connotes more

than an error of law or judgment,'" and saying that "no court–not a trial court, not an appellate court, nor even a supreme court–has the authority, within its discretion, to commit an error of law"). Here we find that the trial court properly considered the relevant statutory provisions. And after reviewing the record, we cannot say that the court's decision to impose consecutive prison terms was unreasonable, arbitrary, or unconscionable.

{¶ 26}   The fourth assignment of error is overruled.

## F. Disposition

{¶ 27}   Because the first and fourth assignments of error are overruled and the second and third assignments of error are sustained, the trial court's judgment is affirmed in part and reversed in part. Reversed are the imposition of court costs and the disapproval of transitional control; the rest of the judgment is affirmed. This case is remanded for the limited purposes of giving Mays the opportunity to move the trial court for a waiver of the payment of court costs and for deleting from the termination entry the statement disapproving transitional control.

. . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.


Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Stephen P. Hardwick
J. David Turner
Hon. Gregory F. Singer