JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Deshon Curry appeals his convictions for felonious assault and having a weapon while under disability. After a thorough review of the record and the briefs of the parties, and for the reasons set forth below, we affirm.
 {¶ 2} On March 31, 2006, the Cuyahoga County Grand Jury issued an indictment charging appellant with felonious assault, in violation of R.C. 2903.11, with one-, three-, and five-year firearm specifications; and with having a weapon while under disability, in violation of R.C.2923.13. At his arraignment on July 7, 2006, appellant entered a plea of not guilty and was assigned counsel. Jury trial commenced on November 1, 2006, and on November 7, 2006, the jury returned a verdict of guilty on felonious assault and on the one-year firearm specification. The jury acquitted appellant on the other firearm specifications. The court also found appellant guilty of having a weapon while under disability.
 {¶ 3} Appellant was sentenced to five years on the felonious assault count, with one additional consecutive year on the firearms specification to be served prior to the felonious assault sentence. He was also sentenced to three years for the weapons conviction, for a total of nine years incarceration. On November 28, 2006, appellant filed his notice of appeal.
 {¶ 4} The facts that give rise to this appeal stem from an incident that occurred during the early morning hours of March 15, 2006, when Paul McPherson, the alleged victim in this case, was shot at by appellant. At trial, McPherson testified *Page 4 
that after leaving the Time Out Bar, he arrived at his home on East 185th Street around 1:30 a.m. As he exited his 1998 Ford Escort, he noticed a Kia pull up behind him, and the front and rear doors on the passenger side opened. McPherson testified that someone shot at him from the Kia while he was getting out of his own car in his driveway. He further testified that the shots damaged his car, tires, car windows, house, and garage, and that he jumped into his other vehicle, a 1991 Ford Econoline truck, which was also parked in his driveway.
 {¶ 5} McPherson testified that he decided to drive his truck in pursuit of the Kia, which had pulled away after several shots were fired. McPherson followed the occupants of the Kia through the streets, even though he did not know who they were. He testified that at one point during the chase, the Kia stopped at a stop sign, and appellant exited the car via the rear passenger door and turned and fired shots at McPherson. McPherson testified that he got a good look at appellant, even though he was forced to duck down below his dashboard to avoid getting hit by the gunfire.
 {¶ 6} McPherson next testified that he followed the Kia to a McDonald's parking lot at East 152nd Street and St. Clair Avenue. He testified that he used his truck to bump the Kia several times as the two vehicles drove through the streets. He was eventually able to pin the Kia against a fence with his truck, at which time the occupants got out of the Kia and, after a moment's hesitation, ran to the establishment next door, Benjamin's Bar. McPherson testified that he was able to *Page 5 
identify the appellant, along with the other two occupants of the car, when the police brought them out of Benjamin's Bar for a cold stand line-up. When asked about his relationship with appellant or any motive appellant may have had for shooting at him, McPherson testified that he didn't know, or perhaps it was because of a dispute he had had with appellant's girlfriend.
 {¶ 7} Several police officers testified as to what they found at the two crime scenes. Patrolman Desatnik testified that he responded to a call to go to McPherson's house, where he observed casings on the ground, the damaged Ford Escort, and bullet holes in the house. Detective Mike Gibbs testified that he found evidence of bullets and casings at McPherson's home. In addition, Detective Gibbs observed six casings on the passenger floorboard of the Kia at the second crime scene.
 {¶ 8} Detective Mike Bell testified that he tested appellant for gunshot residue, prepared the GSR kit, and sent it to the Ohio Bureau of Criminal Investigation ("BCI") for analysis. Lt. James Barrow testified that he conducted a cold stand line-up with the men inside Benjamin's Bar after talking to McPherson, and McPherson identified all three men as occupants of the Kia. Barrow further testified that Allmond, the driver of the Kia by his own admission, said he did not have a gun and that appellant was the shooter.
 {¶ 9} Donna Rose, a forensics expert with BCI, also testified on behalf of the state. She testified that gunshot primer residue was found on appellant's hand. *Page 6 
 Review and Analysis {¶ 10} Appellant cites three assignments of error for our review. Because he has interwoven arguments that address both of his first two assignments of error, we will address them together.
 {¶ 11} "I. The misconduct of the prosecutor denied appellant his constitutional rights to confront witnesses against him, to maintain his post-arrest silence, and to a fair trial.
 {¶ 12} "II. The trial court erred in deciding to call the victim as a court's witness, in compelling the witness to testify in spite of his invocation of his Fifth Amendment privilege against self-incrimination, in admitting into evidence testimonial hearsay statements, and in permitting improper commentary on appellant's post-arrest silence."
 {¶ 13} Appellant argues that the prosecutor's misconduct at trial resulted in a violation of his right to a fair trial. Appellant specifies several instances where the state engaged in prosecutorial misconduct at trial.
 Prosecutorial Misconduct {¶ 14} Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovich (1987), 33 Ohio St.3d 19; State v.Papp (1978), 64 Ohio App.2d 203. An appellant is entitled to a new trial only when a prosecutor asks improper questions or *Page 7 
makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984), 14 Ohio St.3d 13.
 {¶ 15} In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury still would have found the appellant guilty.State v. Maurer (1984), 15 Ohio St.3d 239, 266; State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87.
 {¶ 16} Appellant first argues that it was improper for the state to request that the court call Paul McPherson as the court's witness under Evid.R. 614. Evid.R. 614(A) states: "[T]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Under the ruling inState v. Dacons (1982), 5 Ohio App.3d 112, 449 N.E.2d 507, the state is not required to demonstrate surprise, but may impeach the witness with prior inconsistent statements. A trial court has the power to call witnesses in the exercise of its sound discretion. State v. Adams
(1980), 62 Ohio St.2d 151, 404 N.E.2d 144, paragraph four of the syllabus. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's judgment was unreasonable, arbitrary or unconscionable. Id. at 157. *Page 8 
 {¶ 17} We disagree with appellant's first argument that the use of Evid.R. 614 was improper. In this case, the state planned to call the victim, Paul McPherson, as its own witness; however, McPherson openly admitted to the court that he would not testify against appellant because he feared for his family's safety. He then acknowledged that he would be willing to testify in exchange for time off from the prison sentence he was currently serving. At that point, the state's hands were tied, and it requested that the court call McPherson as the court's witness, pursuant to Evid.R. 614, since the state could no longer vouch for the witness' credibility. Once McPherson testified as the court's witness, counsel for both parties were able to cross-examine him, and the jury was able to determine his credibility.
 {¶ 18} The trial court did not abuse its discretion in calling McPherson as the court's witness. Faced with a situation where the victim refused to testify unless he received a benefit from the court, the state had little choice but to ask for the court's assistance. This circumstance is precisely one for which Evid.R. 614(A) exists: to bring about the proper determination of a case. A witness whose appearance is important to the proper determination of the case, but who appears to be favorable to the other party, is a principal candidate for application of Evid.R. 614(A). State v. Brewer (Feb. 25, 1986), Franklin App. No. 84AP-852. McPherson, as the victim and an eyewitness, was a principal candidate for the application of Evid.R. 614(A) when he would not otherwise cooperate with the party originally planning to call him. *Page 9 
Therefore, the trial court's decision to call McPherson as its witness was not unreasonable, arbitrary, or unconscionable.[1]
 {¶ 19} Appellant next argues that the prosecutor improperly bolstered McPherson's credibility by flaunting in his closing statement the fact that he was called as the court's witness, rather than as a witness for the state. Appellant contends that the jury would be more likely to believe McPherson's testimony if it thought the court elicited the testimony. We disagree.
 {¶ 20} It is important to note at the outset that it was appellant's counsel, in her closing statement, who raised the issue of McPherson's possible bias as the court's witness. Only after she brought it up did the prosecutor address the possible bias in his final closing remarks. The prosecutor did not raise the issue of McPherson testifying as the court's witness in his original closing statement. Nonetheless, the prosecutor is normally entitled to a certain degree of latitude in his concluding remarks. State v. Woodards (1966), 6 Ohio St.2d 14, 26, certiorari denied (1966), 385 U.S. 930, 87 S.Ct. 289; State v.Liberatore (1982), 69 Ohio St.2d 583, 589. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v. United States (1935), 295 U.S. 78, 88,55 S.Ct. 629, 633. The prosecutor is a servant of the law whose interest in a *Page 10 
prosecution is not merely to emerge victorious, but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. United States v. Dorr (C.A. 5, 1981), 636 F.2d 117.
 {¶ 21} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.Dorr, supra, at 120. The prosecution must avoid insinuations and assertions which are calculated to mislead the jury. Berger, supra,295 U.S. at 88, 55 S.Ct. at 633. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Thayer (1931), 124 Ohio St. 1; DR 7-106(C)(4) of the Code of Professional Responsibility. Moreover, the Code further provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and "[a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *." EC 7-37.
 {¶ 22} Having determined that the court did not abuse its discretion in calling McPherson as its witness, we find that the prosecutor did not act improperly by stating in his final closing remarks that McPherson was the court's witness. First, appellant did not object at any time during the prosecutor's closing remarks; therefore, he has waived his right to appeal on this issue, absent plain error. When an appellant fails to object to any of the testimony regarding the above stated *Page 11 
evidence, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. In the instant matter, appellant did not object to the prosecutor's alleged misconduct during his closing argument. As such, appellant has waived all but plain error regarding these comments. State v. Slagle (1992), 65 Ohio St.3d 597,604, 605 N.E.2d 916.
 {¶ 23} To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v. Tichon (1995),102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166,661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83,656 N.E.2d 643.
 {¶ 24} The prosecutor's closing remarks do not constitute plain error. He did not misrepresent the circumstances under which McPherson testified. His closing remarks were not improper, and, even if he should not have commented on McPherson being the court's witness, his comments were not prejudicial. To the contrary, the prosecutor reminded the jury that McPherson did not receive any consideration for his testimony, i.e. time off from the prison sentence he was presently serving. Therefore, his remarks about McPherson undercut appellant's *Page 12 
argument that the witness was not credible. McPherson had no apparent reason to lie since he was not getting anything in return from the prosecutor or the judge. Therefore, the prosecutor did not prejudice appellant's right to a fair trial with his closing statement, and the trial court did not err in allowing the closing remarks about McPherson as the court's witness.
 {¶ 25} Next, appellant argues that the state violated his constitutional right to confront the witnesses against him. Specifically, he argues that Lt. Barrow offered impermissible testimonial statements about what the security guard at Benjamin's Bar told him about appellant. Appellant notes that he should have been able to cross-examine the security guard because no suggestion was made that the security guard was unavailable to testify as a witness.
 {¶ 26} While appellant's assertion is accurate, his argument as it relates to his Sixth Amendment right does not hold up. The court sustained appellant's objection and instructed the jury on this question and response. The court gave a curative instruction to the jury that it was to disregard the state's question and Lt. Barrow's answer. State v.Loza, 71 Ohio St.3d 61, 1994-Ohio-409, 641 N.E.2d 1082. A jury is presumed to follow the instructions given to it by the trial judge.State v. Henderson (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, citingParker v. Randolph (1979), 442 U.S. 62, 99 S.Ct. 2132.
 {¶ 27} Once the jury was instructed to disregard Lt. Barrow's response about what the bartender told him, appellant loses his argument regarding his right to *Page 13 
confront the security guard. Without Lt. Barrow's testimony about what the security guard told him, it is as if the security guard's account no longer exists, absent either the state or appellant calling him as a witness. Neither side chose to do this; therefore, appellant was not prevented by the actions of the state from confronting a witness against him.
 {¶ 28} Additionally, there was no error when the state cross-examined Det. Williams about what the bar owner told him. Appellant called Williams as a defense witness and, on direct, elicited information that Williams said the bar owner was at the bar on March 15. The court allowed the state to cross-examine Williams on this topic only after it was introduced by appellant on direct. Furthermore, appellant did not object at the time to Williams' testimony about his conversation with the bar owner or when the state raised it in its closing remarks; thus, he has waived this argument, absent plain error.
 {¶ 29} We do not find that the testimony of Williams about the bar owner rises to the level of plain error. In essence, Williams testified that the bar owner did not find a gun; therefore, he did not contact him for additional information for his police report. It is difficult to see how this lack of evidence made the jury more likely to convict appellant rather than less. If anything, the jury could find that appellant was not guilty because no gun was found in the bar where the police located appellant. Consequently, we do not find that the jury verdict was prejudiced by Williams' testimony, and there was no plain error. *Page 14 
 {¶ 30} Appellant next argues that the state did not allow him to maintain his post-arrest silence. He points to Williams' testimony that Williams tried to question appellant and appellant chose not to respond as being evidence that the police tried to get appellant to make self-incriminating statements. There are several flaws in appellant's argument. First, it is not clear from the transcript which of the three men arrested on March 15 was questioned by Williams. The transcript of the examination of Williams by appellant's counsel states:
 {¶ 31} "Q: Who else did you interview?
 {¶ 32} "A: The victim, and attempt to interview the arrested male.
 {¶ 33} "Q. I'm sorry?
 {¶ 34} "A: I attempted to interview the arrested male, didn't want to make a statement.
 {¶ 35} "Q. Do they have to give you a statement?
 {¶ 36} "A. No. I went because one of the arrested males told me he wanted to make a statement. When I got there, he wanted to make a deal and hit the street, and I turn him loose."
 {¶ 37} (Tr. 399-400.)
 {¶ 38} Not only is it unclear from the transcript whether the "arrested male" in this exchange refers to appellant, but police officers do not violate the Fifth Amendment when they ask someone in custody if he wants to make a statement, as long as they discontinue questioning when the person in custody refuses. The *Page 15 
police did not interrogate appellant; therefore, the law regarding post-arrest silence cannot apply.
 {¶ 39} Furthermore, it is appellant's counsel who asked Williams whether he asked her client questions. For her to come back now and argue that the state engaged in prosecutorial misconduct is without merit. Testimony that is made in response to a question posed by appellant's own attorney raises the doctrine of "invited error." The "invited error" doctrine prohibits a party from raising an error on appeal which she herself invited or induced the trial court to make.State ex rel. Fowler v. Smith (1994), 68 Ohio St.3d 357, 359,626 N.E.2d 950; Center Ridge Ganley, Inc. v. Stinn (1987), 31 Ohio St.3d 310, 313,511 N.E.2d 106. Therefore, appellant is precluded from raising this issue on appeal.
 {¶ 40} Nonetheless, appellant argues this point further, saying the court erred in allowing the prosecutor to comment during his closing argument on appellant's decision to run away instead of asking McPherson why he pinned the Kia against the fence in the McDonald's parking lot. The prosecutor suggested that if appellant were innocent, he should not have run from the parking lot. This suggestion was not an improper comment by the prosecutor on appellant's post-arrest silence. The prosecutor raised a possible theory in his closing remarks, but the scenario he created focused on appellant's behavior before he was arrested. Appellant has not shown that the result of the trial would clearly have been different had the prosecutor *Page 16 
not been allowed to offer this scenario. The state's theory does not rise to the level of plain error on the part of the trial court.
 {¶ 41} Finally, appellant argues that it was improper for the court to admit McPherson's testimony regarding a possible motive because it called for speculation. Again, appellant did not object to the witness' testimony at the time of trial; therefore, absent plain error, he has waived this argument. We do not find that this testimony rises to the level of plain error. Several times during direct examination, and then by appellant's counsel on cross-examination, McPherson testified that he had no idea why appellant would shoot at him. He testified it was possible the shooting had something to do with an argument he had had with a woman appellant knew; however, he followed up his responses with the fact that he only based his supposition on rumors. Clearly, McPherson did not create a solid motive on which the jury could hang its decision to convict. We do not believe McPherson's thoughts on a possible motive rise to the level of plain error.
 {¶ 42} Based on the foregoing reasons, we overrule appellant's first and second assignments of error.
 Right to a Fair Trial {¶ 43} "III. The cumulative effect of the errors committed by the prosecutor and the court were so prejudicial that appellant was deprived of his right to a fair trial."
 {¶ 44} In his third assignment of error, appellant argues that the cumulative effect of the prosecutor's individual occasions of misconduct resulted in an unfair *Page 17 
trial. While this court has overruled each component of appellant's previous two assignments of error, we will consider whether, collectively, the prosecutor's behavior denied appellant a fair trial. "Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." State v. DeMarco (1987),31 Ohio St.3d 191, 509 N.E.2d 1256, paragraph two of the syllabus.
 {¶ 45} Based on our analysis above, we find the trial court did not err in calling McPherson as the court's witness, in permitting the testimony of the police officers regarding appellant's post-arrest silence or with respect to out-of-court identifications, nor in permitting the prosecutor latitude in his closing statement. Any error committed was harmless error and did not prevent appellant from receiving a fair trial. Therefore, appellant's third assignment of error is overruled.
Judgment is hereby affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 18 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE
PATRICIA ANN BLACKMON, J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENT ONLY.
[1] Appellant argues that McPherson was denied protection under the self-incrimination clause of the Fifth Amendment when he was called to testify. This is a personal right and may not be raised by appellant in this case. *Page 1